NICHOLAS VASSALLO
United States Attorney
JASMINE M. PETERS (WY Bar # 7-5714)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
jasmine.peters@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WALTER D. CLAPP, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 2:23-cv-00133-ABJ<br>) |
| UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, and YELLOWSTONE NATIONAL PARK SUPERINTENDENT CAMERON SHOLLY, in his official capacity, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

### DEFENDANTS' RESPONSE TO REQUEST FOR PRELIMINARY INJUNCTION

Defendants, by and through the United States Attorney for the District of Wyoming and Assistant United States Attorney Jasmine M. Peters, submits *Defendants' Response to Request for Preliminary Injunction*.

## INTRODUCTION

Plaintiff Walter D. Clapp does not satisfy any of the factors for a preliminary injunction. Plaintiff sought a special use permit to drive his wagon, horses, and dog through Yellowstone National Park ("YNP" or "Park") as part of his presidential campaign in July of 2023. The National Park Service ("NPS") worked quickly and diligently with Plaintiff in drafting a permissible special use permit. However, prior to finalizing the permit, Plaintiff left the Park. Plaintiff then filed this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and requested a preliminary injunction.

## BACKGROUND

In July of 2023, Plaintiff asserted a desire to drive a team of horses (accompanied by up to two dogs) and a wagon through YNP as part of his presidential campaign. (*See* Doc. 1). Plaintiff applied for a special use permit on July 6, 2023. (*Id.* at 4); (*see also id.* at 10); Ex. 1 at 1–2, ¶¶ 2–4 (Watson Decl.). He claimed an intent to campaign at designated First Amendment locations within YNP to garner followers. (*See* Doc. 1 at 10); Ex. 1 at 2, ¶ 3. Plaintiff's application for a special use permit requested that he be allowed to (1) drive a horse drawn wagon from Montana into Wyoming and through YNP on park roads from July 16–26, 2023, followed by a truck and horse trailer; (2) speak from the tailgate of the wagon; (3) camp overnight with his horses, wagon, and additional driver; and (4) ride a backcountry trail for a portion of the trip pulling a wagon and vehicle. (Doc. 1 at 12); *see* Ex. 1 at 2, ¶ 5.

After receiving Plaintiff's application for a special use permit, NPS worked quickly to provide a response. Ex. 1 at 3, ¶¶ 8–10. On July 14, 2023, NPS issued a written response to Plaintiff's requests. (Doc. 1 at 12–13); *see* Ex. 1 at 3, 5, ¶¶ 10, 15. NPS denied Plaintiff's request to drive his wagon and horses through the Park on the roadway under 36 C.F.R. § 2.16. (Doc. 1 at

12); *see* Ex. 1 at 3, ¶ 10. Section 2.16 prohibits horses and pack animals in certain locations of national parks, including outside trails, routes, or other areas designated for their use and on roadways. 36 C.F.R. § 2.16(b)–(c). NPS also informed Plaintiff that he could bring his horses through the Park but that he would need to keep his horses trailered in frontcountry[1] areas in accordance with the Yellowstone Superintendent's Compendium ("Compendium"). (Doc. 1 at 12); *see also* Ex. 1 at 3–4, ¶¶ 11, 13. NPS further explained that YNP does not have frontcountry camping areas for stock use, but that stock use is permitted in designated backcountry areas with a permit. (Doc. 1 at 13). Finally, NPS informed Plaintiff that YNP has 11 designated locations for First Amendment activities and that those areas were available to him without a permit unless he intended to use amplification, solicit donations, or use structures. (*See id.*); *see also* Ex. 1 at 4, ¶ 13. He was also told the First Amendment locations were in developed,[2] frontcountry areas and not accessible to horses or pack animals. (Doc. 1 at 13); *see also* Ex. 1 at 3–4, ¶¶ 7, 13.

After receiving the July 14th letter, the NPS continued to discuss the special use permit with Plaintiff at length. Ex. 1 at 5–6, ¶¶ 16–17. The NPS worked diligently to accommodate Plaintiff's requests while complying with the applicable regulations. *Id.* ¶¶ 16–18. On July 18, 2023, NPS sent Plaintiff a second written response. (Doc. 1 at 14–15); *see* Ex. 1 at 6–7, ¶¶ 19–20. NPS again explained that Plaintiff's request to drive his horses un-trailered in developed areas in YNP and use horses in developed areas was prohibited. (Doc. 1 at 14). NPS stated "[t]he prohibitions of horses on roadways, in campgrounds, and in developed areas are long-standing

---

[1] "In Yellowstone National Park the 'frontcountry' is considered the developed areas within the Park." Ex. 1 at 2, ¶ 6. "All other areas are considered 'backcountry.'" *Id.* at 3, ¶ 6.

[2] "Developed area means roads, parking areas, picnic areas, campgrounds, or other structures, facilities or lands located within development and historic zones depicted on the park area land management and use map." 36 C.F.R. § 1.4.

regulations unrelated to the content of any speech or expression." (*Id.* at 15). In addition to the July 18th letter, NPS provided Plaintiff with a permit for Plaintiff to sign. Ex. 1 at 7, ¶ 20; *see* Ex. 2 (Special Use Permit). However, when NPS presented the permit to Plaintiff, Plaintiff informed NPS that he had a personal matter he needed to attend to and left the Park. Ex. 1 at 7, ¶ 22.

Plaintiff filed a "Request for Emergency Preliminary Injunction" and Complaint for Violation of Civil Rights on July 28, 2023 against Defendants in their official capacities under *Bivens*. (Doc. 1). He claims his First Amendment Right to speak in a presidential campaign was violated and seeks a preliminary injunction. (*Id.* at 4).

## LEGAL FRAMEWORK

*Preliminary Injunction Standard*

"A preliminary injunction is an 'extraordinary remedy' that is granted only when 'the movant's right to relief [is] clear and unequivocal.'" *Brooks v. Colo. Dep't of Corr.*, 730 Fed. App'x 628, 631 (10th Cir. 2018) (alteration in original) (citations omitted).

> A movant must show that the following four factors weigh in his favor to establish a right to a preliminary injunction: "(1) [he] is substantially likely to succeed on the merits; (2) [he] will suffer irreparable injury if the injunction is denied; (3) [his] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."

*Id.* at 630 (alterations in original) (citations omitted). However, the movant has a heavier burden if he seeks a preliminary injunction that alters the status quo, a mandatory preliminary injunction, or a preliminary injunction that affords him all the relief he could recover at the conclusion of a full trial on the merits. *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975–76 (10th Cir. 2004). In those circumstances, the movant "must make a *strong* showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Brooks*, 730 Fed. App'x at 630–31. "When a preliminary injunction falls into one of these

categories, it must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Awad v. Ziriax*, 670 F.3d 1111, 1125 (10th Cir. 2012) (citations omitted).

*Applicable Regulations & the Superintendent's Compendium*

Congress authorized the Secretary of the Interior, through the Director of the NPS to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units[.]" 54 U.S.C. § 100101(a). Regulations were subsequently enacted to "provide for the proper use, management, government, and protection of persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service." 36 C.F.R. § 1.1. The regulations apply to visitors of lands managed by the NPS. *See id.* § 1.2. If a visitor wants to engage in activity that is otherwise prohibited or restricted, he may apply for a permit. *See id.* § 1.6. Section 1.6 of the regulations state:

> When authorized by regulations set forth in this chapter, the superintendent may issue a permit to authorize an otherwise prohibited or restricted activity or impose a public use limit. The activity authorized by a permit shall be consistent with applicable legislation, Federal regulations and administrative policies, and based upon a determination that public health and safety, environmental or scenic values, natural or cultural resources, scientific research, implementation of management responsibilities, proper allocation and use of facilities, or the avoidance of conflict among visitor use activities will not be adversely impacted.

*Id.*

The regulations specifically prohibit the use of horses or pack animals "outside of trails, routes or areas designated for their use." *Id.* § 2.16(b). The regulations also prohibit the use of horses or pack animals on park roads "except: (1) Where such travel is necessary to cross to or from designated trails, or areas, or privately owned property, and no alternative trails or routes have been designated; or (2) when the road has been closed to motor vehicles." *Id.* § 2.16(c). The

NPS enforces these regulations, which must be read together with the Compendium to determine if trails, routes, or areas have been designated for the use of horses or pack animals within the Park.

The Compendium is a written compilation of "all the designations, closures, permit requirements and other restrictions imposed" by the superintendent under discretionary authority. *Id.* § 1.7(b). It "is the summary of park specific rules implemented under 36 CFR." Ex. 3 at 1 (Compendium). The Compendium "serves as public notice, identifies areas closed for public use, provides a list of activities requiring either a special use permit or reservation, and elaborates on public use and resource protection regulations pertaining specifically to the administration of the park." *Id.* It also furthers the primary responsibility of the NPS. "[T]he primary responsibility of the NPS is to protect and preserve our national natural and cultural resources while providing for the enjoyment of these resources by visitor and other users, as long as use does not impair specific park resources or overall visitor experience." *Id.* at 2.

## ARGUMENT

Plaintiff seeks to alter the status quo and obtain all the relief that could be afforded to him through a request for a preliminary injunction. This type of preliminary injunction is disfavored. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). As a result, he "'must satisfy a heightened burden' of showing 'that the exigencies of the case support' his motion." *Brooks*, 730 Fed. App'x at 631 (citation omitted). In other words, Plaintiff must make a strong showing that the preliminary injunction factors tilt in his favor. *See Free the Nipple-Fort Collins*, 916 F.3d at 797. Plaintiff has not satisfied his burden.

Typically, this Court will liberally construe the filings of a *pro se* litigant and hold him to a less stringent standard than those drafted by attorneys. *See Brooks*, 730 Fed. App'x at 629; *U.S. v. Hald*, 8 F.4th 932, 949 n.10 (10th Cir. 2021). Although Plaintiff is *pro se*, he is a licensed

attorney in Montana. *See* Member Directory (montanabar.org). Accordingly, the normal deference provided to *pro se* litigants does not apply here. Notably, the attorney-trained Plaintiff did not cite to any legal authority to support his request for a preliminary injunction or complaint.

### A. *Plaintiff is not likely to succeed on the merits.*

Plaintiff filed this lawsuit under *Bivens* against Defendants in their official capacities. (Doc. 1 at 3). Plaintiff's complaint fails to state a claim upon which relief may be granted because Plaintiff cannot maintain a *Bivens* action against federal agencies or Defendants in their official capacities. *See* FED. R. CIV. P. 12(b)(6). It is well known that "a *Bivens* claim can be brought only against federal officials in their individual capacities. *Bivens* claims cannot be asserted directly against the United States, federal officials in their official capacities, or federal agencies." *Smith v. U.S.*, 561 F.3d 1090, 1099 (10th Cir. 2009) (citations omitted). In addition, the United States Supreme Court has never extended *Bivens* to First Amendment claims. *Egbert v. Boule*, 142 S. Ct. 1793, 1807–09 (2022). The Court should not only deny Plaintiff's request for a preliminary injunction but also dismiss his complaint with prejudice.[3]

Even if the Court does not dismiss this case under *Bivens*, the Court should find Plaintiff cannot succeed on the merits of his First Amendment claim because Defendants did not violate his right to free speech. Plaintiff claims Defendants violated his right to free speech because the prohibition against his horses in developed areas is a "content based prior restraint." (Doc. 1 at 6–7). Specifically, he claims the regulations, as applied to him, are a prior restraint that restricts the content of his speech. (*See id.*). Plaintiff is incorrect.

---

[3] If the Court does not dismiss the complaint, Defendants intend on filing a motion to dismiss pursuant to Rule 12 in the near future.

"Generally, a 'prior restraint' restricts speech in advance on the basis of content and carries a presumption of unconstitutionality." *Taylor v. Roswell Indep. School Dist.*, 713 F.3d 25, 42 (10th Cir. 2013) (citation omitted). "A scheme of prior restraint gives 'public officials the power to deny use of a forum in advance of actual expression.'" *American Target Advert., Inc. v. Giani*, 199 F.3d 1241, 1250 (10th Cir. 2000) (quoting *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975)). Prior restraints are typically in the form of judicial injunctions and administrative licensing schemes. *See Taylor*, 713 F.3d at 42. "[A]n administrative licensing scheme does not usually target a particular speaker or instance of speech. Rather, it requires a speaker to obtain approval before engaging in certain forms of speech in a given forum, sometimes based on the volume or scale of the intended speech." *Id.* An example of an administrative licensing scheme is if an ordinance required citizens to obtain a permit before holding a parade or assembly on public property. *See id.* (citing *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 130 (1992)).

In YNP, the use of a horse-drawn wagon on Park roads, camping in the frontcountry with horses, and horses and pack animal travel in developed areas are prohibited by regulations and through the Compendium. *See* 36 C.F.R. § 2.16; *see also id.* § 1.1 (The purpose of the regulations was "to provide for the proper use, management, government, and protection of persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service."); Ex. 3 at 5–8. The regulation at issue, 36 C.F.R. § 2.16, is content neutral and does not qualify as a prior restraint. *See Taylor*, 713 F.3d at 42. Section 2.16 has no bearing on the ability to assemble, parade, or demonstrate. *See id.*; *see also Giani*, 199 F.3d at 1250 ("American Target is barred from aiding any solicitations within the state until it complies with all the Act's requirements. The Act therefore definitionally qualifies as a prior restraint."). Additionally, the prohibitions concerning horse travel are deemed necessary under the Compendium for public

safety and resource protection. *See* Ex. 3 at 5–8. The prohibitions are, therefore, narrowly tailored to serve the government's interest in managing national parks, public safety, and the preservation of wildlife. *See Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (discussing expression and restrictions); *see also* 36 C.F.R. § 1.1 (stating the purpose of the regulations).

Neither the regulations nor the Compendium restricted Plaintiff from engaging in free speech. Plaintiff was instructed that he could use the 11 different First Amendment locations within the Park without a permit unless he intended to use amplification, solicit donations, or use structures. (Doc. 1 at 13). If he intended to use amplification, solicit donations, or structures, he was told he would need to obtain a permit. (*Id.*). NPS also explained that because the First Amendment locations were in developed, frontcountry areas, those sites were not accessible to horses or pack animals. (*Id.*). NPS stated, "[t]he prohibitions of horses on roadways, in campgrounds, and in developed areas are long-standing regulations unrelated to the content of any speech or expression." (*Id.* at 15).

Plaintiff's ability to drive horses on roadways and through developed areas in YNP is not related to his ability to engage in free speech. Section 2.16 of the regulations does not restrict the content of speech but prohibits horse travel in specific areas. Moreover, NPS diligently worked with Plaintiff to draft a permissible special use permit to assist him in accomplishing his goals. Because Plaintiff cannot show a likelihood of success on the merits, the first factor weighs in Defendants' favor.

### B. *Plaintiff will not suffer irreparable injury if an injunction is denied.*

A party seeking a preliminary injunction has the burden of showing the alleged injury "is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citation omitted).

"To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'" *Id.* (citation omitted). Typically, irreparable injury is shown "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad*, 670 F.3d at 1131 (citation omitted). Most courts hold that when an alleged constitutional right is involved, no further showing of irreparable injury is needed. *Id.*; *see also Heideman*, 348 F.3d at 1190 ("The Supreme Court has made clear that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" (citations omitted)).

Plaintiff cannot establish irreparable harm because he has not established a constitutional violation. Further, Plaintiff has not provided any evidence that supports his claim of injury. Plaintiff merely states that if he is not allowed to drive his team of horses through YNP by August 23, 2023, he will be irreparably damaged. (Doc. 1 at 8). His argument is premised on the assumption that if he were to drive his horses through YNP, he would be able to acquire 40,000 individual contributions to get on the debate stage. (*Id.*). Plaintiff's alleged injury is entirely speculative and theoretical. *Heideman*, 348 F.3d at 1189 ("[A]n injury must be certain, great, actual, 'and not theoretical.'" (citation omitted)). The second factor weighs in Defendants' favor.

### C. Plaintiff's alleged threatened injury does not outweigh the injury Defendants will suffer under an injunction.

"To be entitled to a preliminary injunction, the movant has the burden of showing that 'the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction.'" *Id.* at 1190 (citation omitted). "Under the heightened disfavored-injunction standard," the Plaintiff must "make a strong showing that the balance of harms tips in [his] favor." *Free the Nipple-Fort Collins*, 916 F.3d at 806; *see also Awad*, 670 F.3d at 1131.

Plaintiff has not demonstrated how the balance of harms tips in his favor. The NPS has an obligation to manage parks and protect "persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service." 36 C.F.R. § 1.1. "An official tasked with forecasting whether a proposed event might endanger the health or safety of the public must necessarily make a predictive judgment based on the facts as she knows them and her expertise in the field." *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 517 (D.C. Cir. 2010).

The prohibition of horses and other pack animals from developed areas is needed to ensure public safety and resource protection. *See* Ex. 3 at 5–8; Ex. 1 at 4, ¶ 12. This prohibition is important especially during high tourist seasons. *See* Ex. 1 at 4, ¶ 12. In July, the Park averages one million visitors traveling to YNP, contributing to heavy traffic and congestion in developed frontcountry areas. *See id.* As stated in the Declaration of Ken Watson, the Revenue and Fee Business Manager at YNP within NPS, "[i]n addition to being prohibited under Federal regulation, the use of horses on paved roadways would add to potential traffic gridlock during this heavily visited timeframe and create a safety issue for Mr. Clapp and his horses, visitors, rescue vehicles, and park resources." *Id.*

Plaintiff's desire to drive horses on roadways and developed areas does not outweigh Defendants' interest in protecting visitors' safety and preserving resources in YNP. Likewise, the threatened injury to Plaintiff does not outweigh the injury that would be sustained by Defendants if an injunction were granted. The third factor weighs in Defendants' favor.

### D. *An injunction would be adverse to the public interest.*

The last factor the Court should consider is if the injunction would be adverse to the public interest. *See Brooks*, 730 Fed. App'x at 630. Approximately 4 million people visit YNP each year. Ex. 1 at 4, ¶ 12. The public has a strong interest in preserving and visiting national parks, including

YNP. If Plaintiff was allowed to drive horses on roadways and other developed areas throughout YNP, the visitors of the Park would be subjected to safety concerns because of Plaintiff's horses. *Id.* Additionally, the use of horses on paved roadways would potentially contribute to causing gridlock traffic for miles. *See id.* Those with knowledge of the traffic issues in YNP during the summer could easily imagine nothing more frustrating than a man riding a horse and wagon, thereby effectively backing up traffic for miles. To say Plaintiff's campaign ploy would create a safety issue is a wild understatement. Because the public's interest in visiting national parks would be harmed if the Court granted an injunction, the Court should find the fourth factor weighs in Defendants' favor.

## CONCLUSION

Plaintiff does not satisfy any of the factors required of a preliminary injunction. Plaintiff is not likely to succeed on the merits, he failed to demonstrate irreparable injury, the balance of harms weighs in Defendants' favor, and an injunction would be adverse to the public interest. For these reasons, the Court should deny Plaintiff's motion for preliminary injunction and dismiss his complaint.

Dated August 11, 2023

                                                        NICHOLAS VASSALLO
                                                       United States Attorney

By:    */s/ Jasmine M. Peters*
        JASMINE M. PETERS
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing *Defendants' Response to Request for Preliminary Injunction* was filed and served on August 11, 2023 by the following means:

| | |
|---|---|
| Walter D. Clapp | [ ] By Facsimile |
| 301 North Platt | [X] By U.S. Mail – postage prepaid |
| P.O. Box 2043 | [ ] By Hand Delivery |
| Red Lodge, MT 59068 | [ ] By Overnight Courier |
| | [ ] By Electronic Mail |
| | [X] By Electronic Filing |

*/s/ Rob Gaulke*
Rob Gaulke
United States Attorney's Office