Walter D. Clapp
5 Pepsi Dr., Ste 107
P.O. Box 2043
Red Lodge, MT 59068
Telephone: (406) 272-3738
walter@clapp24.us

IN THE UNITED STATES DISTRICT COURT
For the District of Wyoming
Civil Division

| | |
|---|---|
| Walter D. Clapp,<br><br>  Plaintiff,<br>v.<br><br>United States of America, Department of Interior, National Park Service, Superintendent of Yellowstone National Park, and Does 1-10,<br><br>  Defendants. | Case No. 2:23-CV-00133-ABJ |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO REQUEST FOR PRELIMINARY INJUNCTION**

Walter D. Clapp, submits his reply to his emergency request for a preliminary injunction. Included herein is Walter D. Clapp's Declaration of Facts submitted under Penalty of Perjury.

## INTRODUCTION

This Case is about Yellowstone National Park's ("YNP") unequal treatment of my protected 1st Amendment Speech under the "*Applicable regulations & the Superintendent's Compendium*." YNP argues my horse drawn wagon, from which I speak, is prohibited if joined by my horses. Simultaneously, YNP allows horse drawn carriage rides through the park for a fee, in part because "*the stagecoaches in the park today help connect guests to the experiences of the past."* See  https://www.yellowstonenationalparklodges.com/connect/yellowstone-hot-spot/stagecoaches-in-yellowstone/ last accessed August 18, 2023 at 9:00 a.m.

Injunctions are unequivocally granted or denied in EQUITY – this Court unquestionably thereby sits in Equity. Equity is the place where substance trumps form. This informs the Government's argument that I should be afforded no deference. Time is ticking.

Yes, I am a lawyer, but I am not licensed or trained to practice the vast intricacies of the civil procedures of the 10th Circuit or the Supreme Court of the United States of America. Nor have I ever practiced 1st Amendment law. I am a small-town solo practitioner with limited funds. The Defendants' Lawyers have an FY 2023 annual budget of $70.3 Billion. Some deference must be given to the *inequity*. I need help - from the Judicial branch of Government – in Equity. Reform my complaint to name the YNP Superintendent individually, if necessary.

Yellowstone was the perfect place to educate and campaign – but the executive branch has shut down the content of that possibility. The millions of visitors touted by the defendants brief on page 11 were intercepted by YNP bureaucrats. They will soon leave with summer's passing and schools restarting. I satisfy the factors of a "preliminary injunction."

## ADDITIONAL BACKGROUND FACTS

I invested my life savings into horses and a western wagon that other American's can physically connect to while discussing our nation's founding. I am asking Americans to SLOW DOWN, CONNECT, and REMEMBER OUR FOUNDING – specifically the First Proposed Amendment championed by George Washington. Horses, present at our founding, are the pathway to this connection.

As evidence, the YNP licensed concessionaire, Xanterra, has a website which offers multiple pages on the historical significance of horse drawn vehicle rides in YNP:

The "Yellowstone Stagecoach … defined the old western lifestyle and became a staple of Yellowstone's rich history."  See https://www.yellowstonenationalparklodges.com/connect/yellowstone-hot-spot/stagecoaches-in-yellowstone/ last accessed August 18, 2023 at 9:22 a.m.

"Leslie Quinn, an Interpretive Specialist with Yellowstone National Park Lodges" (i.e., Xanterra) believes "the stagecoaches in the park today help connect guests to the experiences of the past." (Id.)

"Stagecoaches were once the primary mode of travel for park visitors. Back then, it would take many days to travel the dusty park roads by stagecoach. Today, park visitors can relive the stagecoach experience on board our replica Tally-Ho stagecoaches. Guests will travel **an old stagecoach** road through the sage-covered meadow of Pleasant Valley." See https://www.yellowstonenationalparklodges.com/adventure/wild-west-adventures/stagecoach-adventure/ (bolding added) - last accessed August 16, 2023 at 10 a.m.

Importantly, there is an "old stagecoach road" which the Xanterra horses are allowed to use to give YNP visitors the experience they are looking for. There are also "front country" corrals where the horses that give the rides live. These horses drive through the front country on roads in violation of the rules and regulations cited by the Defendants to deny my speech. I am prohibited from using these roads or corrals. I was provided no old or closed road to drive. I was provided no corral for my horses to sleep in the front country.

An example of my speech was at the recent Red Lodge Summerfest on August 12, 2023, where I was able to park my horses and wagon and have people come pet the horses, donate, and hear my message. I usually say: "Free horse pets and rides, you just have to listen to me talk. Donations accepted but not expected."

## LEGAL FRAMEWORKS

I. <u>Equity</u>

"A court of equity is a type of court with the power to grant remedies other than monetary damages. These remedies include injunctions, writs, or specific performance among others…. In the United States, the adoption of Federal Rules of Civil Procedure in 1938 gave courts a combined jurisdiction over matters of law and equity." *See* https://www.law.cornell.edu/wex/court_of_equity#:~:text=In%20the%20United%20States%2C%20the,examples%20of%20courts%20of%20equity. – last accessed August 16, 2023 at 11:00 a.m. *See also* "Getting into Equity" by Samuel L. Bray and Paul B. Miller in the Notre Dame Law School, Volume 97, Issue 5 (2022) (discussing injunctions as equitable remedies). Available at: https://scholarship.law.nd.edu/cgi/viewcontent.cgi?article=5023&context=ndlr&utm_medium=email – last accessed August 16, 2023 at 11:00 a.m.

I request no monetary damages – only nominal damages and the preliminary injunction. Equity allows the reformation of my complaint to serve the interests of justice, and the efficiency of this Court. This Court could dismiss my complaint for not using the right magic words, but then the suit would just be refiled, justice delayed, and Court time and resources wasted. I seek a preliminary and permanent injunction of the CFR and Compendiums which prohibit me from exercising my speech with horses in National Parks. Cam Sholly should likely have been named in his individual capacity as well. I ask that my complaint be so reformed as to achieve justice.

Equity also allows this Court to give some *pro se* deference to a solo attorney who does not have the funds to hire a 1st Amendment law firm where time is of the essence.

II. *Preliminary Injunction Standard*

Defendants' preliminary injunction standard fails to cite equity, and failed to cite *Winter v. Natural Resources Defense Council,* 555 U.S. 7 (2008). Instead, the initial citation is to *Brooks v. Colo. Dep't of Corr.,* 730 Fed. App'x 628, 631 (10th Cir. 2018)." This case was unavailable on Google or FastCase – and it does not appear related to the one at hand. The standard provided by Defendants appears, however, in *Winter*. The Government's second cite is to a 2004 10th Cir. case has 6 negative treatments on FastCase.

As Bray and Miller note in "*Getting into Equity,*" because this Court sits in Equity "there is more to a preliminary injunction than just applying *Winter v. Natural Resources Defense Council* [or any one case]." Instead of rote application, Equity is about the story in relation to the public interest. Here, the public interest weighs strongly in favor of allowing the speech I have proposed in a reasonable time, place, and manner.

III. *The 1st Amendment*

It is well established that the First Amendment covers symbolic communication. If the burning of a flag is a mode of expression of Constitutionally protected free speech, then a horse drawn wagon symbolizing the history of our nation is as well. *See e.g. United States v. Eichman*, 496 U.S. 310, 319, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990).

While Defendants conclude that my proposed conduct is not speech, they fully understand the symbology of horses tethered to a coach. A licensed concessionaire devotes multiple pages to the historical use of horse-driven wagons at the park – as detailed above. It is

undeniable that the defendants are fully aware of and support the symbology of a horse drawn vehicle in YNP. Accordingly, their conclusion that the proposed conduct was not protected speech was not only in error but arguably in bad faith. It is respectfully requested that the Court take judicial notice that the proposed conduct falls within the purview of protected speech.

With respect to "content-based exclusion, [authorities] must show that [their] regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Carey v. Brown*, 447 U. S. 455, 447 U. S. 461 (1980). The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Educators' Ass'n,* 460 U.S. 37 (1983) 45,46 (citing *United States Postal Service v. Council of Greenburgh Civic Assns.*, 453 U. S. 114, 453 U. S. 132 (1981); *Consolidated Edison Co. v. Public Service Comm'n*, 447 U. S. 530, 447 U. S. 535-536 (1980); *Grayned v. City of Rockford*, supra, at 408 U. S. 115; *Cantwell v. Connecticut*, 310 U. S. 296 (1940); *Schneider v. State*, 308 U. S. 147 (1939).)

In denying my permit, park officials failed to provide narrowly tailored restrictions to serve a government interest so that I could express my first amendment rights. In so doing they also failed to offer any meaningful alternatives. In my July 6, 2023 email to park officials, I outlined my understanding that there might be necessary restrictions on my movements. To that end, I wrote I would 'listen to whatever you may propose' including traveling at daybreak. Instead of crafting narrow restrictions to accommodate my first amendment request, a complete denial was provided.

### IV.     *Applicable Regulations & the Superintendent's Compendium*

The Code of Federal Regulations and "Superintendent's Compendium" must be read together to understand what is going on in any of our bureaucratically riddled National Parks. When the two are mixed, it allows uneven application – like the instant action by Park officials.

### ADDITIONAL ARGUMENT APPLYING LAW TO FACTS

Contrary to the Government's argument – I do not seek to alter the status quo. I seek merely to enjoy the same treatment afforded Xanterra, and other historical carriage rides offered in the past. This type of preliminary injunction is not disfavored.

a. *I am likely to succeed on the merits.*

Today, there are other Americans selling horse drawn carriage rides, in YNP "front country." Today, and for the past 30+ days, I have been denied this right, despite making lawful requests for 1st Amendment purposes in our nation's 1st public park. The Government's failure to address the commercial horse traffic in YNP "front country" is telling. How does this policy of allowing commerce of the exact nature of my requested activity preserve the stated interests of the Park? How does it serve the public interest? What is protected?

There are no 1st Amendment Zones that allow horses in our Nation's 1st Park. But there are commercial zones that allow horses from which I am excluded. The Park's superintendent declined to make me an exception under the 1st Amendment, as, on information and belief, he has done in the past.

b. *I, and America, will suffer irreparable injury if an injunction is denied.*

If this ship sinks, we all go down with it. You cannot, generally, unsink ships without irreparable injury. America is the ship in this metaphor….

I would be on the debate stage August 23, 2023, but for YNP's bureaucratic response to my request. If that is too speculative, it is not speculative to state that Americans would be educated about the first proposed amendment, but for YNP's bureaucratic response to my request. A lack of education going into the 2024 election is irreparable harm.

c. *My alleged threatened injury does outweigh the injury America will suffer under an injunction.*

The bureaucrats are worried about Tourists being delayed in seeing the Bison. They think the speed of the vacation through Yellowstone is more important that words that may save our Republic. When I last traversed the Park, I was delayed 1.5 hours by said Tourists. My horses would have been waiting on them. Even so, I offered a narrowly tailored travel plan at dawn and dusk – and was denied. My horses in the Front Country do not even necessitate the open roads. YNP could have picked a single closed road for me to drive – and YNP refused.

d. *An Injunction would be in the public interest.*

This is how you know we are in equity. This is the only factor that really matters – and it encapsulates the prior three. The test is all about the public interest – a fundamental equitable principle. I am merely teaching history for a 1st amendment purposes.

We now know that any public gathering carries with it the risk of pandemic. A few horses to kick fools is not really a risk when they are gored weekly by bison and cars and a supervolcano.

There is a reasonable time, place, and manner for speech in all of our Nation's Parks to include Horses. Indeed, the Court should take Judicial Notice that our police force in D.C.'s National Mall (also a National Park), is on horseback – with museum and all – sponsored by Wells Fargo. May I not protest on Horse as well? If not, I doth protest still. Until dead and still.

## CONCLUSION

This American experiment began in revolt with the battle cry to abolish "No Taxation without Representation." George Washington thought we must have Representation above all else. Above speech. Above my First Amendment rights which today bring me here. I believe parading horses around with a wagon is the premier method to spread my historical message.

I have satisfied all of the factors required to receive an emergency preliminary injunction. I request quick action by this Court to allow my protected speech with horses in our federal parks at reasonable times, places, and manners. Winter is not yet here. The tourists still abound.[1]

WHEREFORE, I request that this Court immediately issue a Preliminary Injunction forcing reasonable time, place, and manner uses of his horses and wagon in YNP, or schedule and hold a video conference hearing regarding the same.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on August 18, 2023

_____
Walter D. Clapp

---

[1] Enclosed as Exhibit 1 are photos of Teddy Roosevelt, George Washington, and Myself. This brief, like the Government's is already overlength. My apologies. We do, however, sit in Equity. Photos are worth 1,000 words.

## Certificate of Service

I hereby certify that on the 18th day of August, 2023, a copy of the **PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO REQUEST FOR PRELIMINARY INJUNCTION** was served upon counsel of record by the following method(s):

_____ Hand Delivery

__1_____ U.S. Mail, First Class

_____ Overnight Delivery Service

_____ Fax

___1_____ Email

1. NICHOLAS VASSALLO
   United States Attorney
   JASMINE M. PETERS (WY Bar # 7-5714)
   Assistant United States Attorney
   P.O. Box 668
   Cheyenne, WY 82003-0668
   Telephone: 307-772-2124
   jasmine.peters@usdoj.gov

# EXHIBIT 1

Below is a photo of President Roosevelt ready to drive his team as I have been driving mine:



The above photo is allegedly from Teddy Roosevelt's Midnight Ride after the death of President McKinley. (*See* *https://poststar.com/lifestyles/hometown/theodore-roosevelts-midnight-ride/article_c7234e1a-d1d5-5256-bd84-ff8ae618b57b.html* last accessed Aug. 18, 2023 at 10:48 a.m. *See also* https://www.adirondack.net/history/midnight-ride/ last accessed Aug. 16, 2023 at 12:37 p.m.)

Below is an impressive archival of George Washington with his team from https://www.whitehousehistory.org/photos/george-washingtons-coach-carriage last accessed Aug. 16, 2023 at 12:38 p.m.



My look is somewhere between that of Washington and Teddy.



       The horses are an important metaphor. I am specifically a champion of Washington's message of the importance of fixing a ratio between the number of voters per member in the House of Representative. It was proposed to be our first amendment in our Bill of Rights – but did not pass due to a fluke in the language of the amendment. Despite the fluke - Washington was a champion of this proposed amendment – it was the only time he spoke in the debates on our Bill of Rights.

       Because the amendment did not pass, our House was arbitrarily capped in 1929 by a simple law. Since then, we have had the New Deal, WWII, and our population has tripled. Our representation in our lower house is ~8 times worse than in the lower house of commons in the U.K. That is bullshit. We fought the revolutionary war on a battle cry of "No Taxation without Representation." To this end, I promote Uncapping the House of Representative with horses and the crack of my bullwhip.