**FILED**

4:31 pm, 10/23/23

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

WALTER D. CLAPP,

      Plaintiff,

VS.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
THE INTERIOR, NATIONAL PARK
SERVICE, and SUPERINTENDENT
CAMERON SHOLLY, in his official
capacity,

      Defendants.

Case No.  23-CV-133-ABJ

---

### ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

THIS MATTER comes before the Court on Plaintiff's *Motion for Emergency Preliminary Injunction*. ECF No. 1. Plaintiff, Walter D. Clapp ("Plaintiff"), filed a *Complaint for Violation of Civil Rights* on July 28, 2023—with his complaint, Plaintiff included a handwritten "Request for Emergency Preliminary Injunction." *Id.* at 1. Defendants, United States of America, United States Department of the Interior, National Park Service, and Yellowstone National Park Superintendent Cameron Sholly ("Defendants") filed their *Response to Request for Preliminary Injunction* on August 11, 2023. ECF No. 6. Plaintiff replied, in turn, on August 18, 2023. ECF No. 7.

1

Following Plaintiff's reply, Defendants submitted a *Request for Hearing* (ECF No.

8) on August 22, 2023, and this Court held a preliminary injunction evidentiary hearing on

September 11, 2023. Having considered the filings, applicable law, and being otherwise

fully advised, the court finds Plaintiff's *Motion for Emergency Preliminary Injunction*

(ECF No. 1) should be **DENIED**.

## BACKGROUND

Plaintiff, Walter D. Clapp, is a licensed attorney from Red Lodge, Montana who is

currently running for President of the United States of America. ECF No. 1 at 10. At the

core of his campaign, Mr. Clapp aims to connect the nation and presumptive campaign

supporters to his presidential candidacy through the use of a horse-drawn wagon—imagery

that Mr. Clapp asserts requires onlookers to consider the founding of the United States.

ECF No. 1 at 6. Mr. Clapp encountered a hitch in his campaign when he sought to drive

his team of horses, accompanied by his campaign wagon and dog, through Yellowstone

National Park in the middle of July. *Id.* at 6–7.

Mr. Clapp first applied by email for a Special Use Permit on July 6, 2023. ECF No.

1-1. He detailed his intention to conduct his campaign events through Yellowstone

National Park at several designated First Amendment sites from July 16, 2023 through July

26, 2023. *Id.* The National Park Service interpreted his permit application to include

requests to: (1) "Drive a wagon drawn by two draft horses from Gardiner, Montana,

through Yellowstone on park roads to the East Entrance from July 16-23, 2023, followed

by a truck and horse trailer," (2) "Speak from the tailgate of the wagon to visitors and

possibly have smaller gatherings to talk to visitors," (3) Camp overnight with his horses,

wagon, and vehicle operator, and (4) "Ride a backcountry trail for a portion of the trip from one 1st Amendment site to another and pull the wagon to the other end of the trail with a vehicle." ECF No. 1-2 at 1. On July 14, 2023, the National Park Service issued a written response denying Mr. Clapp's Special Use Permit application, because the requested activities were "prohibited by the Code of Federal Regulations (CFR), the Superintendent's Compendium in Yellowstone National Park, or they are not considered to be a protected First Amendment activity." *Id.* Upon reconsideration after speaking with Mr. Clapp, the National Park Service issued a second denial on July 18, 2023. ECF No. 1-3.

Plaintiff brings this *Bivens* action upon allegations that Defendants "have used CFR, and the Superintendents 'Compendium' to directly restrict the content of [his] campaign and speech" in violation of the First Amendment. ECF No. 1 at 4. On the face of this Complaint, Plaintiff handwrote "Request for Emergency Preliminary Injunction," presumably requesting this Court to issue a preliminary injunction upon the merits of his complaint. *Id.* Plaintiff, therefore, apparently requests this Court to enjoin the Defendants from enforcing the Code of Federal Regulations and the Superintendents Compendium against Plaintiff during the course of this litigation. The Court will review as such.

## STANDARD OF REVIEW

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Greater Yellowstone Coal. V. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003) ("[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."). To prevail on a

request for a preliminary injunction, Plaintiff must show: "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208, 1209 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374, 172 L.Ed.2d 249 (2008)) (footnote omitted). *See also, Tuttamore v. Lapin*, 429 F. App'x. 687, 692 (10th Cir. 2011), *Cathey v. Jones*, 505 F. App'x. 730, 732 (10th Cir. 2012); *Chapman v. Lampert*, 555 F. App'x. 758, 762 (10th Cir. 2014)). Generally, "courts agree that plaintiff must present a prima facie case but need not show a certainty of winning." *Coal. Of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Trans.*, 843 F.3d 886, 901 (10th Cir. 2016) (citation omitted). In First Amendment cases, "the likelihood of success on the merits will often be the determinative factor because of the seminal importance of the interests at stake." *Verlo v. Martinez*, 820 F.2d 1113, 1126 (10th Cir. 2016) (internal quotations and citations omitted).

Even so, "courts 'disfavor' some preliminary injunctions and so require more of the parties who request them." *Free the Nipple–Fort Collins v. City of Fort Collins, Co.*, 916 F.3d 792, 797 (10th Cir. 2019) (citation omitted). "Disfavored preliminary injunctions don't merely preserve the parties' relative positions pending trial." *Id.* Rather, "a disfavored injunction may exhibit any of three characteristics: (1) it mandates action (rather than prohibiting it), (2) it changes the status quo, or (3) it grants all the relief that the moving party could expect from a trial win." *Id.* These types of "disfavored" injunctions require a heightened showing of the four preliminary injunction factors and are "more closely

4

scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208, 1209 (10th Cir. 2009).

## ANALYSIS

Plaintiff brings this action under *Bivens*, claiming Defendants violated his First Amendment free speech rights. However, the legal theories which Plaintiff posits his speech should be evaluated have evolved throughout his filings. In his *Complaint*, Plaintiff first contends that Defendants' denial of Plaintiff's Special Use Permit, prohibiting him from driving his team of horses through developed park areas, is a "content based prior restraint" as applied to the Plaintiff. ECF No. 1 at 6–7. In his *Reply*, Plaintiff seems to suggest that horses are "symbolic communication," warranting the protected status of speech akin to the burning of a United States flag. ECF No. 7 at 4. Plaintiff also asserts that the enforcement of park regulations is a time, place, and manner restriction—one that park officials failed to narrowly tailor to serve a significant government interest nor provide alternative channels of communication. *Id.* at 5.

The majority of Mr. Clapp's assertions rest on conclusory statements, elaborate metaphor, and incorrect legal arguments, thereby lacking the requisite factual and legal assertion necessary to carry the burden of his preliminary injunction request. The Court wades in to untangle the legal claims Plaintiff has made, pursuant to a preliminary injunction analysis. My analysis does not reach whether Plaintiff's request is a disfavored injunction, as the request that the Court enjoin the Defendants fails under normal scrutiny. Finding Plaintiff has not shown a likelihood of success on the merits nor satisfied the

remaining considerations for a preliminary injunction, the Court will not enjoin the actions of Defendants to this litigation.

**1.      Likelihood of Success on the Merits**

When evaluating a request for a preliminary injunction, the Court initially addresses whether Plaintiff has made a showing that he will likely succeed on the merits of his factual and legal claims. *See RoDa Drilling Co.*, 552 F.3d at 1208. To show a substantial likelihood of success on the merits, a party must "make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought." *Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972) (quoting *Crowther v. Seaborg*, 415 F.2d 437 (10th Cir. 1969)). Plaintiff has not done so here. To the extent Plaintiff's claims are brought pursuant to a *Bivens* action, the asserted First Amendment violation by the named Defendants is unsustainable under well-established judicial precedent. Even if this Court fails to dismiss Plaintiff's *Bivens* claim, Plaintiff's action is similarly unlikely to succeed when evaluated as a First Amendment freedom of speech violation.

**a.      Deference to Plaintiff as a Pro Se Litigant**

As a threshold matter, Plaintiff requests this Court to provide the liberal deference generally afforded to *pro se* litigants. Mr. Clapp is a licensed attorney in both Montana and New York, and he asserts this constitutional claim against Defendants as a *pro se* litigant. The government notes briefly that the level of deference normally afforded to a *pro se* litigant should not apply in the current matter. *See* ECF No. 6 at 7. Plaintiff has presented a similarly brief counterargument in his *Reply* that his participation as a *pro se* litigant

should warrant him a level of deference from this Court, based on equity[1] or lack thereof. *See* ECF No. 7 at 2. I'm inclined to agree that the Plaintiff, a licensed attorney in two states, should not be afforded the same or more liberal deference generally given to *pro se* litigants.

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991). However, the formal pleadings in this matter are drafted by a lawyer— the Plaintiff, Mr. Walter Clapp. Plaintiff states that he has never practiced "1st Amendment law," and as a "small-town solo practitioner with limited funds," this Court must give some deference to the "inequality" between the two parties. ECF No. 7 at 2. Plaintiff thus seeks the more lenient consideration a district court may afford a party who is not an attorney or a party that does not receive assistance from an attorney. While this Court affirms Plaintiff's right to proceed *pro se*, where he has sought to invoke the leniency of this Court does not warrant additional consideration of Plaintiff's *pro se* status.

Plaintiff notes that, while he is a lawyer, he is "not licensed or trained to practice the vast intricacies of the civil procedures of the 10th Circuit or the Supreme Court of the United States of America." ECF No. 7 at 2. Plaintiff is incorrect in asserting that his lack of knowledge excuses an obligation to comply with the same procedural rules that govern all other litigants in federal court. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th

---

[1] Plaintiff states: "Injunctions are unequivocally granted or denied in EQUITY– this Court unquestionably thereby sits in Equity. Equity is the place where substance trumps form. This informs the Government's argument that I should be afforded no deference." ECF No. 7, at 2.

Cir. 1994) (finding a plaintiff's status as *pro se* "does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."). Similarly, as stated in the Local Civil Rules for the District of Wyoming, "any party proceeding on his or her own behalf without an attorney shall be expected to read and be familiar with the Local Rules of this Court, the Federal Rules of Civil Procedure, the Federal Rules of Evidence . . . and shall proceed in accordance therewith." D. Wyo. Civ. R. 84.2(c). Despite Plaintiff's assertion that he is unfamiliar with the intricacies of federal court and that he is unfamiliar with the type of violation he alleges, this Court requires that *pro se* litigants proceed in accordance with corresponding rules that govern this Court and its proceedings.

Therefore, I decline to entertain any request Plaintiff has made upon this Court to amend his complaint *sua sponte* or to excuse him from the legal standards and procedures this Court imposes upon all *pro se* litigants. *See* ECF No. 7 at 4. There is no incantation of words this Court prescribes the Plaintiff recite to receive the requested relief he seeks. There is simply the law—an indispensable tool at every litigant's disposal.

**b.      Availability of *Bivens* Remedy**

Plaintiff brings his First Amendment claim against Defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] In doing

---

[2] Plaintiff checked a box on his Pro Se Complaint for Violation of Civil Rights (Non-Prisoner) form indicating the Basis for Jurisdiction in this matter arises under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* ECF No. 1, at 3–4. He then provided additional context for his lawsuit in the subsequent sections, which remind *pro se* litigants that "Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights." *Id.* at 4. The form is available on the United States Courts website, https://www.uscourts.gov/forms/pro-se-forms/complaint-violation-civil-rights-non-prisoner.

so, Plaintiff is asserting a claim against the clear weight of established precedent. *See Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) (holding "there is no *Bivens* cause of action for First Amendment retaliation."); *see also Bush v. Lucas*, 462 U.S. 367 (1983) (declining to extend an implied constitutional cause of action under *Bivens* to a federal employee's First Amendment claims against his former supervisor). Regardless of how Plaintiff chooses to characterize his constitutional right to free speech under the First Amendment, his claims fall short under *Bivens*.

A *Bivens* action refers to a civil lawsuit against a federal officer acting under the color of federal authority for alleged violations of the United States Constitution. *Bivens*, 403 U.S. at 389. The term "*Bivens* action" originated from *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), in which the United States Supreme Court held that a violation of an individual's Fourth Amendment rights by federal officers can give rise to an implied federal cause of action for monetary damages for unlawful search and seizures. The United States Supreme Court has sharply limited claims under *Bivens*, extending this doctrine only twice in the past thirty years to include additional implied claims under the Fifth[3] and Eight[4] Amendments. *Egbert*, 142 S. Ct. at 2803. Despite this historical extension to the bounds of *Bivens*, further expansion of the *Bivens* doctrine is considered a "disfavored judicial activity" and the Supreme Court has

---

[3] *See Davis v. Passman*, 442 U.S. 228 (1979) (holding that an employee who sued a Congressman under *Bivens* for gender discrimination could pursue a claim under the equal protection principles embodied in the Fifth Amendment's Due Process Clause).

[4] *See Carlson v. Green*, 446 U.S. 14 (1980) (holding a *Bivens* remedy existed for a federal prisoner's estate against the director of the Bureau of Prisons for failing to provide adequate medical treatment in violation of the Eighth Amendment).

"consistently refused to extend Bivens to any new context or new category of defendants." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1859 (2017) (citation omitted).

"To inform a court's analysis of a proposed *Bivens* claims," the Supreme Court "has framed the inquiry as proceeding in two steps." *Egbert*, 142 S. Ct. at 1803. First, a court considers "whether the case presents 'a new *Bivens* context' — i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859-1860). Defendants correctly establish that the U.S. Supreme Court has never extended *Bivens* to First Amendment claims. ECF No. 6 at 7. This claim therefore presents a new context, a notion that Plaintiff does not address or refute. *See* ECF No. 7. In fact, no mention of *Bivens* appears in Plaintiff's Reply. *See id.*

If a *Bivens* claim arises under a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858). The *Egbert* court acknowledged that its precedents "describe two steps," but explained that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*; *see also Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022) (recognizing that *Egbert* "appeared to alter the existing two-step *Bivens* framework"). The Supreme Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a Bivens remedy." *Egbert*, 142 S.Ct. at 1803 (citing *Hernandez v. Mesa*, 140 S.Ct. 735, 741, 743 (2020)). The takeaway noted by the Supreme Court and affirmed by the Tenth Circuit is that a Bivens remedy will

be unavailable "in most every case." *Id.* ("If there is a rational reason to think that the answer is "Congress"—as it will be in most every case—no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power.") (internal citations omitted); *see Silva*, 45 F.4th at 1140 ("[E]xpanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances.") (internal quotations and citations omitted).

This case is no different than "most every case," nor does the plaintiff seem to allege as much. *Egbert*, 142 S.Ct. at 1803. For the Court to evaluate Plaintiff's probability of success in this action, he must make a prima facie case illustrating that he will be entitled to the injunction he has requested. *See Automated Mktg. Sys., Inc. v. Martin*, 467 F.2d 1181, 1183 (10th Cir. 1972) (citation omitted). Aside from checking a box on his form complaint, Plaintiff fails to support a basis for a *Bivens* action altogether. *See* ECF Nos. 1, 7. The litigants in this matter do not explicitly address whether there is a rational reason to defer to Congress for relief, but Plaintiff's *Bivens* claim fails in another respect.

"Because § 1983 and *Bivens* are vehicle for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Upon the filing of a lawsuit, the plaintiff in a *Bivens* action bears the burden of proving that a constitutionally protected right has been violated by federal officers and therefore "must identify specific actions taken by particular defendants . . . that violated their clearly established constitutional rights." *Id.* at 1228. In his *Complaint*, Plaintiff claims his First Amendment right to free speech has been violated by Defendants'

11

denial of his Special Use Permit, pursuant to the CFR and Superintendent's Compendium. ECF No. 1 at 4. Specifically, Plaintiff contends that the National Park Service denial of his permit application to drive his team of horses accompanied by his dog—the asserted "content" of Plaintiff's speech—through Yellowstone National Park's First Amendment sites is a violation of his right to free speech under the First Amendment. *See id.* However, it is well-established that *Bivens* claims cannot be "asserted directly against the United States, federal officials in their official capacities, or federal agencies." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (citations omitted) Here, Plaintiff alleges violations under *Bivens* against the United States of America, two federal agencies, and a federal official in his official capacity—all improper parties under Bivens. *See* ECF No. 1 at 1. Even if this Court were to find Plaintiff's *Bivens* action could proceed under the two-step inquiry laid out by the Supreme Court, Plaintiff could not sustain this type of action against the named Defendants. To the extent that Plaintiff intends to bring his claims under *Bivens*, his complaint is subject to dismissal and therefore not likely to succeed on the merits.

### c.    First Amendment Freedom of Speech Claim

Even if this Court were to disregard the availability of a *Bivens* remedy, Plaintiff is not likely to succeed on his asserted First Amendment claim. The First Amendment to the United States Constitution prohibits the government[5] from enacting laws that abridge "the freedom of speech." U.S. Const. I. Pursuant to the First Amendment right to freedom of

---

[5] The First Amendment applies to the states through the Fourteenth Amendment. *New York Times v. Sullivan*, 376 U.S. 254, 264 n.4 (1964).

speech, the United States Supreme Court has recognized that "[a] regulation of speech is content-based under the First Amendment if it target[s] speech based on its communicative content—that is, if it applies to particular speech because of the topic discussed or the idea or message expressed." *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1249 (10th Cir. 2023) (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). "The commonsense meaning of the phrase 'content-based' requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (internal quotations and citation omitted). "A law may be content-based if it cannot be justified without reference to the content of the regulated speech or it was adopted by the government because of disagreement with the message [the speech] conveys." *Id.* (internal quotations and citation omitted). However, a "regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "Generally, a 'prior restraint' restricts speech in advance on the basis of content and carries a presumption of unconstitutionality." *Taylor v. Roswell Indep. School Dist.*, 713 F.3d 25, 42 (10th Cir. 2013) (citation omitted).

Plaintiff contends Defendants violated his right to free speech under the First Amendment by prohibiting him from traveling by horse-drawn wagon through the park in furtherance of his presidential campaign. ECF No. 1 at 6–7. Plaintiff first articulated a claim against Defendants for a violation of his "1st Amendment Rights to Speak in Presidential Campaign." ECF No. 1 at 4. But this Court's analysis turns on a more nuanced assertion by the Plaintiff. Mr. Clapp specifically alleges Defendants violated his First

Amendment right to free speech because the prohibition against the use of his horses in developed areas of Yellowstone National Park is a "content based prior restraint." ECF No. 1 at 6–7. Plaintiff emphasizes his horses are communicative content, but he fails to support this claim. He does not cite any legal authority and the court finds none to recognize a horse, or any animal, as "speech" or "content." I fail to see how Plaintiff's loosely drawn implications propel horses to a category of speech warranting protection under the First Amendment.

Plaintiff's permit was denied pursuant to 36 C.F.R. § 2.16, which delineates regulatory prohibitions on the use of horse and pack animals within the Park. ECF No. 1-2; ECF No. 1-3. In its denial, the National Park Service noted all First Amendment sites established by 36 C.F.R. § 2.51 and areas designated for Distribution and Sale of Printed Matter under 36 C.F.R. § 2.52 are located in developed areas of the Park. ECF No. 1-3. Unfortunately for the Plaintiff, horse and pack travel is prohibited in the developed areas and front country areas of the Park. *See* ECF No. 1-3.

Within this denial read the following: "We do not consider use of horses in developed areas a protected First Amendment right." ECF No. 1-3. Defendants further argue the regulation and Compendium provisions at issue are content-neutral. *See* ECF No. 6 at 8–9. The Court agrees. As Defendants states, a prior restraint may take on the form of an administrative scheme, just as in the current case. ECF No. 6 at 8. The regulation governing horse and pack animals prohibit the presence of animals in certain areas of the Park but does not facially prohibit a right to share an idea or message. *See id.* at 8–9; *see* 36 C.F.R. § 2.16. Instead, such regulation is deemed "necessary for public safety and

14

resource protection." ECF No. 6-3 at 5–8. There is no mention of content or speech. Even though this regulation has an "incidental" effect on the Plaintiff's vision for his presidential campaign, the regulation ultimately serves a purpose unrelated to the content of expression. *StreetMediaGroup, LLC*, 79 F.4th at 1249.

Judicial precedent makes clear that the government may impose reasonable restrictions on the time, place, or manner of speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non– Violence*, 468 U.S. 288, 293 (1984). Defendants have done so here. Under 36 C.F.R. § 2.16, horse and pack animals are restricted from designated Park areas to serve Defendants' interest in protecting visitors and natural resources. *See* ECF No. 6 at 8–9. Plaintiff was offered alternative means of sharing his message, to communicate about his presidential campaign without his horses. *See* ECF No. 1-2; See ECF No. 1-3. He declined. *See* ECF No. 1.

Finally, Plaintiff maintains a relatively insistent argument against the constitutionality of the provisions at issue predicated on the "unequal treatment" given by the Defendants to a commercial outfitter operating horse-drawn wagon rides in the Park. ECF No. 7 at 3. Plaintiff is likely welcome to submit an application to become a concessionaire in the Park, pursuant to 36 C.F.R. §§ 51 et seq. The Court, however, is unconvinced that the concessionaire contract between Yellowstone National Park and Xanterra is somehow bearing upon Plaintiff's First Amendment claim.

If Plaintiff is, instead, contending that his horses are symbolic speech this argument is also without merit. *See* ECF No. 1 "[B]ecause of the danger that an apparently limitless variety of conduct can be labeled speech, a display will only constitute speech if it is sufficiently imbued with elements of communication." *Cressman v. Thompson*, 798 F.3d 938, 954–955 (10th Cir. 2015) (internal quotations and citations omitted). "[A] court will only find symbolic speech where a plaintiff can identify a message that a reasonable onlooker would perceive." *Id.* at 961. With respect to Plaintiff's horses, it is not clear whether the plaintiff is identifying a message with his horses at all—let alone one that a reasonable observer would discern.

The connection drawn from a draft horse pulling a campaign wagon to the founding of America to the "1st proposed Amendment to the Constitution," as argued by Plaintiff, is too attenuated to properly qualify as symbolic speech. *See* ECF No. 1. Unrelenting, Plaintiff maintains "[h]orses, present at our founding, are the pathway to this connection." ECF No. 7 at 2. Plaintiff's pleadings in the aggregate fail to tie these nuanced elements of "communication" together, creating doubt that a reasonable onlooker could identify from the mere presence of a horse that Mr. Clapp's campaign focus centers upon the first proposed Amendment to the United States Constitution. *See id.* at 4.

In his *Complaint*, Plaintiff provides perhaps the best articulation for his unlikely success on the merits of his First Amendment claim: "Today, there are for-profit entities housing and driving teams of horses in the front country of the YNP. They are exercising no 1st Amendment rights." ECF No. 1 at 6. It's unlikely that Mr. Clapp's First Amendment claim will prevail under a similar conclusion. He is unlikely to succeed on the merits of his

First Amendment claim, though the possibility is not entirely foreclosed. This factor nonetheless weighs against granting the injunctive relief he seeks.

## 2. Irreparable Injury in the Absence of Preliminary Relief

To obtain injunctive relief, Plaintiff must show that he will suffer irreparable harm if his request for an injunction is denied. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). This Court will not issue an injunction merely upon the possibility of irreparable harm. *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance."). Rather, "[t]o constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman*, 348 F.3d at 1189.

It is firmly established that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). However, as this Court has evaluated in the previous discussion, Plaintiff has failed to demonstrate a substantial likelihood of success on his First Amendment claim. Therefore, he is not entitled to this presumption of irreparable injury. *See Schrier v. University of Co.*, 427 F.3d 1253, 1266 (10th Cir. 2005).

Plaintiff's irreparable injury is largely speculative. *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) ("[A] speculative or theoretical injury will not suffice."). His argument rests on the belief that Defendants have somehow prohibited him from reaching the Republican debate stage—a goal which requires Mr. Clapp to procure 40,000 individual contributions to his presidential campaign. ECF No. 1 at 7–8. Plainly,

Plaintiff declares that if "the Park continues to withhold [his] right to speak with [his] animals present, and drive my team between 1st Amendment sites, [he] will be irreparably damaged." *Id.* at 8. Mr. Clapp fails to demonstrate how his permit denial will lead to his inability to reach 40,000 prospective campaign supporters. The evidence he presents suggests, at most, the mere possibility that his permit denial kept him from garnering support with his horses in Yellowstone National Park. Asking the Plaintiff to rein in his expectations for his venture through the Park is not irreparable injury. Notably, the denial of his permit did not prohibit him from campaigning in the Park, the denial simply didn't allow Mr. Clapp to campaign in the exact manner he had requested.

Plaintiff's opinions do not provide a sufficient basis for finding he would suffer certain, great, actual harm. *Heideman*, 348 F.3d at 1189. This factor weighs against granting a preliminary injunction, as requested by the Plaintiff.

## 2.     Balance of the Equities

To be entitled to a preliminary injunction, the movant has the burden of showing that the threatened injury outweighs damage the proposed injunction may cause the opposing party. *Heideman*, 348 F.3d at 1188.  "In every case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding the requested relief, paying particular regard to the public consequences of deploying an injunction." *Willey v. Sweetwater Cnty. School Dist. No. 1 Bd. of Tr.*, No. 23-CV-069-SWS, 2023 WL 4297186 (D. Wyo. June 30, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Here, the scales do not tip in Plaintiff's favor.

A preliminary injunction would perhaps allow Mr. Clapp to drive his team of horses through Yellowstone National Park to speak at First Amendment sites. By contrast, if issued, a preliminary injunction could prohibit the NPS from ensuring public safety and protection of Park resources. *See* ECF No. 6 at 11. Plaintiff claims "[t]he bureaucrats are worried about Tourists being delayed in seeing the Bison." ECF No. 7 at 6. This statement minimizes the nature of Defendants' position. Under 36 C.F.R. § 1.1, the National Park Service is tasked with the "protection of persons, property, and natural and cultural resources within areas under the jurisdiction of the National Park Service." Narrowing the unnecessary risk associated with horses and other pack animals falls within a presumably long list of concerns during high tourist season in Yellowstone National Park. *See* ECF No. 6. Defendants' interest in protecting park visitors outweighs Plaintiff's unsupported injury. Therefore, this factor weighs against issuing a preliminary injunction.

**4.    Public Interest**

A movant also has the burden of demonstrating that an injunction, if issued, is not adverse to the public interest. *Heideman*, 348 F.3d at 1188. In support, Plaintiff cites conceptual "equity," and elaborates that he is "teaching history for a 1st amendment purposes [sic]." ECF No. 7 at 7. Defendants, on the other hand, explain the Park has a duty and interest to keep approximately four million annual visitors safe during their time in Yellowstone. ECF No. 6 at 11.  "A few horses to kick fools," as the Plaintiff states, seems almost certainly a risk the Defendants are intending to abate in the interest of protecting the public. *See* ECF No. 7 at 7. Therefore, the final factor of a preliminary injunction weighs against its issuance.

## CONCLUSION

For these reasons, it is **HEREBY ORDERED** Plaintiff's *Motion for Emergency Preliminary Injunction* (ECF No. 1) is **DENIED**.

Dated this 23ᵈ day of October, 2023.

Alan B. Johnson
United States District Judge