

**FILED**

**1:06 pm, 3/8/24**

**Margaret Botkins**
**Clerk of Court**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

WALTER D. CLAPP,

        Plaintiff,

    VS.

UNITED STATES OF AMERICA,
UNITED STATES DEPARTMENT OF
THE INTERIOR, NATIONAL PARK
SERVICE, and SUPERINTENDENT
CAMERON SHOLLY, in his official
capacity,

        Defendants.

Case No. 23-CV-133-ABJ

---

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

---

THIS MATTER comes before the Court on Defendants' *Motion to Dismiss* and *Brief in Support of Motion to Dismiss* pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on October 3, 2023. ECF No. 13; ECF No. 14. Plaintiff, Walter D. Clapp ("Plaintiff"), filed his response to Defendants' *Motion to Dismiss* on October 17, 2023, and Defendants replied to Plaintiff's response on October 24, 2023. ECF No. 15; ECF No. 17. Having considered the filings, applicable law, and being otherwise fully advised, the court finds Defendants' *Motion to Dismiss* (ECF No. 13) should be and hereby is **GRANTED**. Plaintiff's claims against the Defendants in this matter are **DISMISSED WITH PREJUDICE**.

1

## BACKGROUND

Plaintiff, Walter D. Clapp, is a licensed attorney from Red Lodge, Montana who is currently running for President of the United States of America. ECF No. 1 at 10. At the core of his campaign, Mr. Clapp aims to connect the nation and presumptive campaign supporters to his presidential candidacy through his use of a horse-drawn wagon—imagery that Mr. Clapp asserts requires onlookers to consider the founding of the United States. ECF No. 1 at 6. During his campaign travels, Mr. Clapp encountered a hitch in his plans when he sought to drive his team of horses, accompanied by his campaign wagon and dog, through Yellowstone National Park in the middle of July. *Id.* at 6–7.

Mr. Clapp first applied by email for a Special Use Permit on July 6, 2023. ECF No. 1-1. He detailed his intention to conduct his campaign events through Yellowstone National Park at several designated First Amendment sites from July 16, 2023 through July 26, 2023. *Id.* The National Park Service interpreted his permit application to include requests to: (1) "Drive a wagon drawn by two draft horses from Gardiner, Montana, through Yellowstone on park roads to the East Entrance from July 16-23, 2023, followed by a truck and horse trailer," (2) "Speak from the tailgate of the wagon to visitors and possibly have smaller gatherings to talk to visitors," (3) Camp overnight with his horses, wagon, and vehicle operator, and (4) "Ride a backcountry trail for a portion of the trip from one 1st Amendment site to another and pull the wagon to the other end of the trail with a vehicle." ECF No. 1-2 at 1. On July 14, 2023, the National Park Service issued a written response denying Mr. Clapp's Special Use Permit application, because the requested activities were "prohibited by the Code of Federal Regulations (CFR), the Superintendent's

2

Compendium in Yellowstone National Park, or they are not considered to be a protected First Amendment activity." *Id.* Upon reconsideration and after speaking with Mr. Clapp again about his campaign plans, the National Park Service issued a second denial on July 18, 2023 to his revised application for a Special Use Permit. ECF No. 1-3.

Plaintiff filed a *Complaint for Violation of Civil Rights* on July 28, 2023, under the jurisdictional basis of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff brings this *Bivens* action pursuant to allegations that Defendants "have used CFR, and the Superintendents 'Compendium' to directly restrict the content of [his] campaign and speech," in violation of the First Amendment. *Id.* at 4. With his complaint, Plaintiff included a handwritten indication of a prospective "Request for Emergency Preliminary Injunction," presumably requesting this Court to issue a preliminary injunction upon the merits of his Complaint. ECF No. 1. The Court reviewed Plaintiff's request as one to enjoin the Defendants from enforcing the Code of Federal Regulations and the Superintendents Compendium against Plaintiff during the course of this litigation. *See* ECF No. 16. Defendants, the United States of America, United States Department of the Interior, National Park Service, and Yellowstone National Park Superintendent Cameron Sholly (collectively, "Defendants"[1]) filed their *Response to Request for Preliminary Injunction* on August 11, 2023. ECF No. 6. Plaintiff replied, in turn, on August 18, 2023. ECF No. 7. Following Plaintiff's reply, Defendants submitted a

---

[1] Plaintiff instructed the Court to "[r]eform my complaint to name the YNP Superintendent individually, if necessary," and seemingly added "Does 1-10" to the caption of his pleadings. ECF No. 7 at 1–2. However, given that Plaintiff has not filed an Amended Complaint or requested such amendment by motion pursuant to Federal Rule of Civil Procedure 15, the Court does not include these alterations or perceived amendments *sua sponte* within Plaintiff's operative pleading documents. *See* Fed. R. Civ. P. 15.

*Request for Hearing* (ECF No. 8) on August 22, 2023, and this Court held a preliminary injunction evidentiary hearing on September 11, 2023. The Court denied Plaintiff's *Request for a Preliminary Injunction* on October 23, 2023, finding that Plaintiff did not satisfy the considerations warranting a preliminary injunction. ECF No. 16. Defendants now seek to dismiss Plaintiff's Complaint, arguing Plaintiff cannot maintain this action against the named parties and that amendment of Plaintiff's complaint would be futile. ECF No. 13; ECF No. 14.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint when the pleading fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Therefore, "to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In its analysis, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

Notwithstanding, "the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

4

complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted). Ultimately, the Court evaluates "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

Plaintiff brings this case pursuant to *Bivens*, claiming Defendants violated his First Amendment right to freedom of speech within Yellowstone National Park. ECF No. 1. Defendants argue that Plaintiff cannot maintain this action against the named parties under *Bivens* and amendment of Plaintiff's complaint would be futile because a *Bivens* remedy

5

does not extend to First Amendment claims against the named Defendants. ECF No. 13. In

his response, Mr. Clapp reiterates his dedication to his "cause of action arising in equity"

and his desire to enjoin "the U.S. Congress and the Agents to which it has delegated

combined rulemaking and executive authority over 1st Amendment to our Constitution and

our Nation's Parks." ECF No. 15 at 1. Notably, the Court has already declined to grant

Plaintiff's request for an injunction in this matter. *See* ECF No. 16. The majority of Mr.

Clapp's assertions and allegations rest on conclusory statements, elaborate metaphor, and

incorrect legal arguments, thereby lacking the requisite factual and legal assertions

necessary to state a claim upon which relief may be granted. The Court expands upon its

decision to dismiss Plaintiff's complaint in the subsequent discussion.

## I.    Liberal Construction of Plaintiff's Pleadings

Mr. Clapp is an attorney proceeding *pro se* in this matter. While the Court is

generally obliged to construe *pro se* pleadings liberally, I reiterate the decision not to

extend the benefits of such liberal deference and lenient pleading considerations to Mr.

Clapp because he is a licensed attorney. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th

Cir. 1991) ("A *pro se* litigant's pleadings are to be construed liberally and held to a less

stringent standard than formal pleadings drafted by lawyers."); *see also Mann v. Boatright*,

477 F.3d 1140, 1148 n.4 (10th Cir. 2007) ("While we generally construe pro se pleadings

liberally, the same courtesy need not be extended to licensed attorneys."); *see also* ECF

No. 16 at 6–8. As a general matter, the liberal construction afforded to litigants proceeding

*pro se* is done so on the basis that these individuals are not represented or assisted by

counsel, do not have legal training, and are otherwise unskilled in the law. *See Tatten v.*

6

*City & Cnty. of Denver*, 730 F. App'x 620, 624 (10th Cir. 2018). Mr. Clapp, however, is a

licensed attorney who has chosen to represent himself in this matter.

The liberal construction of Mr. Clapp's Complaint is a rather moot point, for even

if the Court interprets Mr. Clapp's filings liberally, this interpretation does not relieve him

of complying with the Federal Rules of Civil Procedure or the burden of alleging sufficient

facts on which a cognizable legal claim could be based. *See Ogden v. San Juan Cnty.*, 32

F.3d 452, 455 (10th Cir. 1994) (finding a plaintiff's status as *pro se* "does not excuse the

obligation of any litigant to comply with the fundamental requirements of the Federal Rules

of Civil and Appellate Procedure."); *see also Mann*, 477 F.3d at 1145–1149 (affirming the

dismissal of a pro se attorney's complaint on the basis she failed to satisfy the Federal Rule

of Civil Procedure Rule 8 pleading standards). Further, the Court cannot act as Mr. Clapp's

advocate. *Hall*, 935 F.2d at 1110. Therefore, I again decline to entertain any request

Plaintiff has made upon this Court to amend his complaint *sua sponte* or to excuse him

from the legal standards and procedures this Court imposes upon all litigants, *pro se* or

otherwise. *See* ECF No. 7 at 2–4; *see* ECF No. 16 at 6–8.

## II.   Availability of a *Bivens* Remedy

Plaintiff brings his First Amendment claim against Defendants under *Bivens v. Six

Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[2] In doing

so, Plaintiff is asserting a claim against the clear weight of established precedent. *See*

---

[2] Plaintiff checked a box on his Pro Se Complaint for Violation of Civil Rights (Non-Prisoner) form indicating the Basis for Jurisdiction in this matter arises under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* ECF No. 1, at 3–4. He then provided additional context for his lawsuit in the subsequent sections, which remind *pro se* litigants that "Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights." *Id.* at 4.

*Egbert v. Boule*, 142 S. Ct. 1793, 1807 (2022) (holding "there is no *Bivens* cause of action for First Amendment retaliation."); *see also Bush v. Lucas*, 462 U.S. 367 (1983) (declining to extend an implied constitutional cause of action under *Bivens* to a federal employee's First Amendment claims against his former supervisor); *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding Bivens is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances."). Therefore, regardless of how Plaintiff chooses to characterize his constitutional right to free speech under the First Amendment, his claims fall short under *Bivens*.

A *Bivens* action refers to a civil lawsuit against a federal officer acting under the color of federal authority for alleged violations of the United States Constitution. *Bivens*, 403 U.S. at 389. The term "*Bivens* action" originated from *Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971), in which the United States Supreme Court held that a violation of an individual's Fourth Amendment rights by federal officers can give rise to an implied federal cause of action for monetary damages for unlawful search and seizures. The United States Supreme Court has sharply limited claims under *Bivens*, extending this doctrine only twice in the past thirty years to include additional implied claims under the Fifth[3] and Eight[4] Amendments. *Egbert*, 142 S. Ct. at

---

[3] *See Davis v. Passman*, 442 U.S. 228 (1979) (holding that an employee who sued a Congressman under *Bivens* for gender discrimination could pursue a claim under the equal protection principles embodied in the Fifth Amendment's Due Process Clause).

[4] *See Carlson v. Green*, 446 U.S. 14 (1980) (holding a *Bivens* remedy existed for a federal prisoner's estate against the director of the Bureau of Prisoners for failing to provide adequate medical treatment in violation of the Eighth Amendment).

8

2803. Despite this historical extension to the bounds of *Bivens*, further expansion of the *Bivens* doctrine is considered a "disfavored judicial activity" and the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1859 (2017) (citation omitted).

"To inform a court's analysis of a proposed *Bivens* claims," the Supreme Court "has framed the inquiry as proceeding in two steps." *Egbert*, 142 S. Ct. at 1803. First, a court considers "whether the case presents 'a new *Bivens* context' — i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859-1860). If a *Bivens* claim arises under a new context, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1858); *see also Logsdon v. United States Marshal Service*, 91 F.4th 1352, 1355 (10th Cir. 2024).

The *Egbert* court acknowledged that its precedents "describe two steps," but explained that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.*; *see also Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022) (recognizing that *Egbert* "appeared to alter the existing two-step *Bivens* framework"). The Supreme Court instructed that if there is "even a single" rational reason to defer to Congress to create a remedy for relief, "a court may not recognize a *Bivens* remedy." *Egbert*, 142 S.Ct. at 1803 (citing *Hernandez v. Mesa*, 140 S.Ct. 735, 741, 743 (2020)). Therefore, the takeaway noted by the Supreme Court and affirmed by the Tenth Circuit is that a *Bivens* remedy will be

unavailable "in most every case." *Id.* ("If there is a rational reason to think that the answer is "Congress"—as it will be in most every case—no *Bivens* action may lie. Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power.") (internal citations omitted); *see Silva*, 45 F.4th at 1140 ("[E]xpanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances.") (internal quotations and citations omitted); *see also Logsdon*, 91 F.4th at 1355 ("The Court has said in effect that almost any difference between the cases at hand and the three Court precedents can justify rejecting a cause of action").

## A.    Plaintiff's Claim Arises in a New Context

To extend a *Bivens* remedy to Plaintiff's claims, this Court must first determine whether Plaintiff's case arises in a new *Bivens* context. A case presents a new context if it is "different in a meaningful way" from *Bivens*, *Davis*, and *Carlson* or if it "involves a new category of defendants." *Hernández v. Mesa*, 140 S. Ct. 735, 743 (2020). In *Egbert*, the Supreme Court noted that it has "never held that *Bivens* extends to First Amendment claims." *Egbert*, 142 S. Ct. at 1807 (citation omitted). Because *Bivens*, *Davis*, nor *Carlson* involved a First Amendment claim, this case is meaningfully different from the cases in which the United States Supreme Court has implied a damages action. Therefore, the Court finds Plaintiff's First Amendment claims arise in a new context and Plaintiff's case is factually distinct from *Bivens*, *Davis*, and *Carlson*.

"Because § 1983 and *Bivens* are vehicle for imposing personal liability on government officials, we have stressed the need for careful attention to particulars,

especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013). Upon the filing of a lawsuit, the plaintiff in a *Bivens* action bears the burden of proving that a constitutionally protected right has been violated by federal officers and therefore "must identify specific actions taken by particular defendants . . . that violated their clearly established constitutional rights." *Id.* at 1228. Defendants argue that there is no *Bivens* remedy available for Plaintiff's First Amendment claims against the United States, federal agencies, or a federal agent in his official capacity. ECF No. 13-1 at 6. In his *Complaint*, Plaintiff claims his First Amendment right to free speech has been violated by Defendants' denial of his Special Use Permit, pursuant to the CFR and Superintendent's Compendium. ECF No. 1 at 4. Specifically, Plaintiff contends that the National Park Service denial of his permit application to drive his team of horses accompanied by his dog—the asserted "content" of Plaintiff's speech—through Yellowstone National Park's First Amendment sites is a violation of his right to free speech under the First Amendment. *See id.* However, it is well-established that *Bivens* claims cannot be "asserted directly against the United States, federal officials in their official capacities, or federal agencies." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (citations omitted). Here, Plaintiff alleges violations under *Bivens* against the United States of America, two federal agencies, and a federal official in his official capacity—all improper parties under *Bivens*. *See* ECF No. 1 at 1.

As the Tenth Circuit has explained, *Egbert* leaves "no doubt that expanding Bivens is not just 'a judicially disfavored activity,' it is an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140 (citing *Egbert*, 142 S. Ct. at 1803-07, 1809-10).

11

Thus, to the extent that Plaintiff intends to bring his First Amendment claim under *Bivens*, it is subject to dismissal because *Bivens* does not cover the violations alleged in the complaint. Aside from checking a box on his form complaint, Plaintiff fails to support a basis for a *Bivens* action altogether. *See* ECF No. 1; ECF No. 7; ECF No. 15. In fact, Plaintiff states he does "not need *Bivens* for [his] complaint to survive," and then restates that "the *Bivens* claim should survive on nominal damages plus attorney fees." ECF No. 15 at 4. His support for this statement mischaracterizes the well-established limitations of *Bivens* remedies by claiming "[t]he current U.S. Supreme Court may very well be itching to saddle the bureaucracy with *Bivens* actions. You get to decide which way we find out." *Id.* The clear weight of *Bivens* precedent certainly indicates the opposite. Plaintiff's statement fails to address or refute the Defendant's arguments and does not accurately reflect established precedent. This case is no different than "most every case," nor does the plaintiff seem to allege as much. *Egbert*, 142 S.Ct. at 1803. The Court finds that Plaintiff's First Amendment claim arises under a new context, and by applying established Supreme Court precedent to the present case there is no *Bivens* remedy that exists for this claim.

## B. Special Factors Counsel Against Extending a Bivens Remedy to Plaintiff's Claim

The second inquiry this Court engages in is whether there are "special factors" indicating that the Judiciary is at least arguably less equipped than Congress "to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1803 (quotation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (quoting *Hernandez v. Mesa*,

12

140 S. Ct. 735, 743 (2020)). Despite the two-part inquiry, the query as to whether a *Bivens* remedy exists "often resolves to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* The Tenth Circuit has viewed the key takeaway in *Egbert* as being "that courts may dispose of *Bivens* claims for 'two independent reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs.'" *Silva*, 45 F.4th at 1141 (quoting *Egbert*, 596 U.S. at 494).

The "reason to pause" here stems from the Supreme Court's analysis of First Amendment issues under *Bivens*. In *Egbert*, the Supreme Court concluded that the Judiciary is "ill equipped" to alter the framework established by other political branches to address conduct that allegedly violates the Constitution, "especially so when it comes to First Amendment claims." *Egbert*, 596 U.S. at 500. The Supreme Court was "convinced" that extending *Bivens* to alleged First Amendment violations against federal officials would increase "substantial social costs, including the risk that fear of personal monetary liability and harassing litigation" that may unduly inhibit the discharge of federal duties. *Id.* at 499 (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). Therefore, the *Egbert* court held "Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action." *Id.* (internal quotations and citation omitted). Plaintiff has not given the Court any reason to deviate from this holding in regard to Plaintiff's First Amendment claim under *Bivens*. Therefore, despite the new context under *Bivens*, The Court concludes that Congress is in a better position to create remedies in this context.

## C.    Amendment of Plaintiff's Complaint Would be Futile

To the extent that Plaintiff intends to bring his First Amendment claim under *Bivens*
against Defendants in this matter, his Complaint is subject to dismissal because his
complaint is legally insufficient to state a claim for which relief may be granted. Further,
dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail
on the facts he has alleged and it would be futile to give him an opportunity to amend."
*Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *see also Fleming v. Coulter*, 573
F. App'x 765, 769 (10th Cir. 2014) ("Complaints drafted by pro se litigants ... are not
insulated from the rule that dismissal with prejudice is proper for failure to state a claim
when it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would
be futile to give him the opportunity to amend."). Here, the Court concludes Plaintiff cannot
prevail on the facts and legal theories alleged in his Complaint. Despite Plaintiff's
allegations, the Court finds, as a matter of law, that a *Bivens* remedy is not available to the
Plaintiff under the First Amendment against the Defendants in this case.

The Court similarly finds that it would be futile for Plaintiff to amend his Complaint.
The Plaintiff has been on notice that his Complaint suffers from significant pleading
deficiencies and the Plaintiff did not seek leave to amend or attempt to address these
deficiencies, indicating that such deficiencies in his complaint are not attributable to
Plaintiff's oversight or lack of knowledge. *See Reynoldson v. Shillinger*, 907 F.2d 124, 126
(10th Cir. 1990) ("Particularly where deficiencies in a complaint are attributable to
oversights likely the result of an untutored *pro se* litigant's ignorance of special pleading
requirements, dismissal of the complaint without prejudice is preferable."). In a previous

14

order, this Court declined to amend Plaintiff's Complaint *sua sponte* or to excuse him from the legal standards and procedures imposed upon all litigants in federal court. ECF No. 16 at 8. Plaintiff was also informed that to the extent he intends to bring his claims under *Bivens*, his complaint was subject to dismissal and therefore unlikely to succeed on the merits. *Id.* at 12. However, he has continued to assert a cursory argument that his claim under *Bivens* should prevail. *See* ECF No. 15 at 4. Despite several indications from the Defendants and the Court, Plaintiff has not made an appropriate attempt to amend or alter his complaint or claims. Instead, the Plaintiff has consistently and inappropriately requested that this Court amend his complaint "as Justice so requires." *Id.* He further states, "[t]his official/individual capacity mess can be challenged by this Court amending the caption as Justice so requires" and included a request in a footnote that "Does 1-10" be added in their individual capacity as defendants to this litigation. *Id.* Amendment in this manner would not alter the outcome of this litigation. The proposed amendment, as suggested by the Plaintiff, would still be subject to dismissal under *Bivens*. Therefore, the Court finds that amendment in this case would be futile, and this case shall be dismissed with prejudice.

## CONCLUSION

For these reasons, it is **HEREBY ORDERED** Defendants' *Motion to Dismiss* (ECF

No. 13) should be **GRANTED**. Plaintiff's claims against the Defendants in this matter are

**DISMISSED WITH PREJUDICE**.

Dated this 7ᵗʰ day of March, 2024.

Alan B. Johnson
United States District Judge